The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Rose M. **MEDINA**, Defendant–Appellant.

No. 94CA1361.

Colorado Court of Appeals, Div. III.

April 4, 1996.

As Modified on Denial of Rehearing Sept. 5, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Clement P. Engle, Senior Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, State Public Defender, Thomas R. Williamson and C. Keith Pope, Deputy State Public Defenders, Denver, for Defendant–Appellant.

Opinion by Judge PLANK.

Defendant, Rose M. Medina, appeals the trial court's ruling on her Crim. P. 35(c) motion in which she sought an extended proportionality review of her sentence. We vacate the sentence and remand for re-sentencing.

In 1988, the defendant was convicted of second degree forgery, theft, tampering with physical evidence, and third degree assault. She was also convicted of being an habitual offender. The trial court sentenced her to three concurrent life sentences, running consecutively to two outstanding sentences.

On direct appeal, this court reversed the theft conviction and remanded with directions to vacate the sentence. The remainder of her convictions were upheld.

The defendant then filed a Crim. P. 35(c) motion requesting the court to review the proportionality of her sentence. The trial court found the sentence not to be constitutionally disproportionate, and the allegation that such finding is in error forms the sole basis for this appeal. We agree that the defendant's sentence is constitutionally disproportionate.

An appellate court is not bound by a trial court's conclusions of law. *Evans v. Romer,* 854 P.2d 1270 (Colo.1993). Thus, proportionality determinations are reviewed *de novo* on appeal. *People v. Mershon,* 874 P.2d 1025 (Colo.1994).

In performing a proportionality review, the following factors are to be considered: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for

the commission of the same crime in other jurisdictions. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

### I. First Factor of *Solem* test

■ An extended proportionality review is required only when the felonies supporting the sentence are lacking in inherent gravity. *People v. Mershon, supra.* The following factors should be considered when assessing the degree of harm caused or threatened by the particular offense: whether the crime involves violence; the absolute magnitude of the crime; whether the crime is a lesser included offense; whether the crime is an attempt crime; and the motive for the crime. *People v. Gaskins,* 825 P.2d 30 (Colo.1992) (*Gaskins I* ).

■ The underlying crimes consist of the following:

In 1978, the defendant was convicted of two counts of second degree forgery. In one count, the defendant handed a forged prescription to the pharmacist; in the other, a co-defendant handed a forged prescription to the pharmacist.

In 1982, the defendant was convicted of attempted escape as a result of her walking away from the Community Responsibility Center (CRC).

In 1984, the defendant was convicted of two felonies in different counties of attempting to obtain a controlled substance by fraud and deceit and obtaining a controlled substance by fraud and deceit. In both cases, the defendant handed a forged prescription to a pharmacist.

As noted above, the triggering offenses for the defendant's life sentence as an habitual criminal occurred in 1988. There, the defendant stole a check from a purse left unattended in a shopping cart. The defendant forged the check and attempted to cash it, but was caught by store employees. While being held in the store, the defendant grabbed the check from an employee, causing a red mark on the employee's arm. The defendant then ate the check.

Thus, of all the offenses, only the last involved violence, and that did not result in any serious injury.

Further, while we do not consider escape to be a minor offense, walking away from the open CRC facility is less serious than breaking out of prison or jail, especially when no violence or threat thereof was involved.

All but one of the Colorado cases examining proportionality review have upheld the sentence. However, those cases involve more serious felonies. *See Wilczynski v. People,* 891 P.2d 998 (Colo.1995) (triggering felonies: second degree burglary and theft; underlying felonies: second degree murder, DUI, receiving stolen property); *People v. Hernandez,* 686 P.2d 1325 (Colo.1984) (triggering felonies: second degree burglary, conspiracy to commit same; underlying felonies: robbery, theft, attempted second degree forgery, sale of narcotic drugs, second degree burglary, theft over $100,000, and possession of contraband); *People v. Drake,* 785 P.2d 1257 (Colo.1990) (triggering felony: accessory to first degree murder; underlying felonies: habitually giving worthless checks, theft of property, forgery); *see also People v. Anaya,* 894 P.2d 28 (Colo.App.1994); *Juarez v. People,* 855 P.2d 818 (Colo.1993); *People v. Austin,* 799 P.2d 408 (Colo.App.1990); *Alvarez v. People,* 797 P.2d 37 (Colo.1990); *People v. Penrod,* 892 P.2d 383 (Colo.App.1994).

However, another division of this court recently vacated a sentence, determining that it was constitutionally disproportionate to the crime. *People v. Gaskins,* 923 P.2d 292 (Colo.App.1996) (*Gaskins II* ). We find this case to be highly instructive.

The defendant in *Gaskins* had three underlying felonies consisting of a minor physical assault on a police officer, an attempted criminal trespass, and theft. The triggering felony was an assault on an employee who interrupted an attempted theft. Defendant bit the employee's arm and broke his nose.

In determining that the sentence was constitutionally disproportionate, a division of this court found that the defendant's crimes caused or threatened only minimal harm to society. In comparing *Gaskins'* offenses to those mentioned above, the court concluded

that his crimes were not as serious. In fact, "to approve a life sentence in this case would be to lower drastically the 'grave and serious' threshold." *Gaskins II, supra,* 923 P.2d at 296.

*Gaskins II* is closely analogous to our case. Here, the crimes involved were also minor. We recognize that the defendant has a lengthy record. However, none of her crimes has posed a major threat to society.

Further, if breaking a person's nose and kicking a policeman's fingers are considered relatively minor acts of violence, *see Gaskins II, supra,* then merely causing a red mark on an arm, as occurred here, is minor as well.

Hence, the defendant's crimes are so lacking in gravity and seriousness as to give rise to an inference of sentence disproportionality. Thus, we examine the other factors of *Solem.*

## II. Second Factor of *Solem* test

The second *Solem* factor requires us to examine sentences for other similarly situated offenders in this jurisdiction. The defendant supplied a lengthy list of the sentences received by persons convicted of second degree forgery, as well as several pre-sentence investigation reports. None of those defendants received as severe a sentence as the defendant.

However, the defendant, due to her unique circumstances, was unable to provide either us or the trial court with the sentences of persons similarly situated. She provided two lists; one with persons convicted of a second degree forgery only, and one with persons who had multiple convictions, including second degree forgery. When other crimes were listed, defendant does not indicate if the sentence received was for the last felony alone or if the person was adjudicated an habitual offender. Thus, here, a comparison of sentences imposed on other offenders is not helpful in addressing the second *Solem* factor.

■ Nevertheless, for purposes of this factor, we may also look at the current sentencing scheme. *People v. Anaya, supra.* Since the defendant's sentencing, the General Assembly has amended the penalties for tampering with evidence, second degree forgery, and the habitual criminal statute. Such a change may be considered in determining the proportionality of the sentence. *People v. Anaya, supra.*

Tampering with evidence has been lowered from a class 5 felony to a class 6 felony. Section 18-8-610, C.R.S. (1995 Cum.Supp.). Second degree forgery, formerly a class 4 felony, is now a class 5 felony. Sections 18-5-102(1)(c), 18-5-105, and 16-13-101, C.R.S. (1995 Cum.Supp.). Further, the habitual criminal statute has been amended so that the defendant here would now be subject only to a sentence four times the maximum of the presumptive range. Section 16-13-101, C.R.S. (1995 Cum.Supp.). As a result, if the defendant were sentenced today, she could only receive a twelve year sentence for being an habitual offender.

## III. Third Factor of *Solem* test

After completing the first two prongs of *Solem,* the trial court declined to address prong three, considering it unnecessary. While we understand the court's reasoning, here the analysis is necessary. The last factor of the *Solem* test requires us to examine other sentences imposed in other jurisdictions for the same or similar crimes.

In examining the habitual offender statutes from neighboring states, we find that, were the defendant to have committed these crimes in those states, she would not have been subject to such a harsh penalty. *See* Ariz.Rev.Stat. Ann. § 13-604 (1995 Cum. Supp.); Cal.Penal Code § 667 (West Cum. Supp.1996); Kan. Stat. Ann. § 21-4504, § 21-3711 (1995 Cum.Supp.); Mont.Code Ann. § 46-18-502 (1995 Cum.Supp.); Neb. Rev.Stat. § 29-2221 (1994 Cum. Supp.); Nev. Rev.Stat. § 207.010 (1995 Cum.Supp.); Utah Code Ann. § 76-3-203.5 (1995 Cum.Supp.).

Thus, sentencing this defendant to life imprisonment is disproportionate to allowable sentences for similar offenses in other states. *See Gaskins II, supra.*

■ In summary, we conclude that the defendant's crimes were lacking in seriousness or gravity; that she could not be sen-

tenced in the same manner today; and that, in comparison to sentences in other jurisdictions for the same offense, her sentence is disproportionate. Accordingly, we conclude that the sentence imposed was constitutionally disproportionate and cannot stand.

The trial court, upon resentencing may consider, but need not utilize, the little habitual criminal statute pursuant to § 16–13–101(1), C.R.S. (1986 Repl.Vol. 8A). *See Gaskins II, supra.*

Accordingly, the sentence is vacated, and the cause is remanded for imposition of a new sentence consistent with the views expressed herein.

NEY and ROY, JJ., concur.