The PEOPLE of the State of Colorado, Petitioner,

v.

Harold CUNEFARE, Respondent.

No. 03SC782.

Supreme Court of Colorado,
En Banc.

Nov. 30, 2004.

As Modified on Denial of Rehearing
Dec. 20, 2004.

Ken Salazar, Attorney General, Christine C. Brady, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, for Respondent.

KOURLIS, Justice.

In *People v. Harold Cunefare*, 85 P.3d 594 (Colo.App.2003), the court of appeals reversed Harold Cunefare's convictions for tampering with a witness or victim under section 18–8–707, C.R.S. (2004), and for forgery under section 18–5–102, C.R.S. (2004).

We granted certiorari to determine two issues: first, what the prosecution is required to prove to sustain a conviction under section 18–8–707(1)(a); and second, whether a letter to the prosecutor urging him to drop the charges against the defendant, signed by the defendant in the victim's name without her knowledge or consent, constitutes forgery under section 18–5–102.[1]

We now hold that section 18–8–707(1)(a) neither requires evidence that the witness or victim has been legally summoned to an official proceeding nor does it require evidence that the defendant's actions are interfering with actual testimony. With respect to the forgery charge, we hold that a letter to the prosecutor in which the defendant forged the victim's signature is an instrument that may affect a legal right or interest of the defendant within the purview of the forgery statute. Hence, we reverse the court of appeals' decision and reinstate both convictions.

## I. Facts and Procedural History

In March of 1998, the defendant's ex-wife Karen Cunefare (the "victim") filed a complaint against the defendant for domestic assault. Out of that incident, the People charged the defendant with second degree assault, menacing, false imprisonment, wiretapping, and crime of violence with a deadly weapon. One month later, the victim called the victim-witness advocate and requested that the charges be dropped. She then sent a signed, notarized letter to the District Attorney stating that she did not tell the truth in her complaint and that she had made the statements out of anger.

1. Three issues were presented on petition: Whether the crime of tampering with a witness or victim requires proof that the witness or victim was legally summoned to an official proceeding; whether the general assembly intended "legally summoned" to mean "subject to legal process" and; whether a letter to a prosecutor urging him or her to drop the charges against the defendant constitutes the crime of forgery when it is penned by the defendant and forged with the victim's signature, and without the victim's knowledge or consent.

In August of that year, the defendant contacted the victim, who had moved to Tennessee, and asked that she recant again. He sent the victim a prepared letter recanting her statements and asked that she sign and send it to the prosecutor. The victim refused. The defendant then signed the victim's name without her consent or knowledge and sent the letter to the prosecutor. Subsequently, the People dropped the assault and related charges.

The People then charged the defendant with witness tampering and forgery based upon the defendant's efforts to have the charges dismissed, including the falsified letter. At trial, the victim testified that she did not author the April letter and that she had signed it out of fear. With respect to the August letter, the victim asserted that the defendant had contacted her and requested her to sign and forward the letter to the District Attorney but that she had torn it up without signing it. The victim opined that the defendant had signed her name on the letter and sent it to the District Attorney's office. The jury returned verdicts of guilty on both charges.

On appeal, the defendant argued that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he committed tampering with a witness and forgery. The court of appeals agreed. As to the tampering charge, the court held that "the People must prove an attempt to interfere with actual testimony, which is anticipated to be offered at a hearing, trial, or other proceeding," and that although the victim had given a "statement" to the prosecutor prior to her contact with the defendant, there was no evidence that the statement was sworn or otherwise constituted testimony. As to the forgery charge, the court concluded that the prosecution failed to present sufficient evidence that the letter to the prosecutor was a document that affected some right or status sufficient to fall within the forgery statute. The court of appeals therefore vacated both convictions.

We granted certiorari on the issues identified above and now conclude that the subsection of the tampering statute under which Cunefare was charged merely requires evidence that Cunefare induced or attempted to induce the victim to testify falsely or unlawfully withhold her testimony. It does not require evidence of 'actual testimony.' We further conclude that the forgery statute prohibits a defendant from falsely executing a letter to the District Attorney's office intending to defraud that office into dismissing a legal action against him—and that such a letter does suffice as an instrument affecting his legal status. Accordingly, we reverse the court of appeals' vacation of Cunefare's convictions and remand for issuance of mandate and sentencing.

## II. Analysis

### A. Conviction Under the Tampering Statute

#### 1. Background of Section 18–8–707

■ In the companion case of *People v. Yascavage*, No. 03SC559, 101 P.3d 1090, 2004 WL 2711049 (Colo.2004), we concluded that the general assembly intended section 18–8–707 as a whole to criminalize a wide range of activities related to interference with a witness or victim of a crime. We also held that each subsection of 18–8–707 presents an independent objective prohibited under the Tampering statute. Therefore, to sustain a conviction under section 18–8–707, the subject of the defendant's influence must be a person encompassed by the introductory provision and the defendant's objective must be prohibited in subsection (1)(a), (b), or (c) of section 18–8–707.

A "witness" covered by the statute is not just someone who is subject to legal process. Rather, "witness" means any natural person:

(a) *Having knowledge of the existence or non-existence of facts relating to any crime;*

(b) Whose declaration under oath is received or has been received as evidence for any purpose;

(c) *Who has reported any crime to any peace officer, correctional officer, or judicial officer;*

(d) Who has been served with a subpoena issued under the authority of any court in

this state, of any other state, or of the United States; or

(e) *Who would be believed by any reasonable person to be an individual described in paragraph (a), (b), (c), or (d) of this subsection (2).*

§ 18–8–702(2) (emphasis added). Therefore, the introductory portion of the statute contains no limitation that would require proof that the witness or victim be under legal process.

Section 18–8–707 then creates three distinct forms of witness tampering, each with different elements required for a conviction. Section 18–8–707(1)(a) prohibits the defendant from inducing or attempting to induce a witness or victim to "testify falsely or unlawfully withhold any testimony." Section 18–8–707(1)(b) prohibits the defendant from inducing or attempting to induce a witness or victim to "absent himself from any proceeding to which he has been legally summoned;" and section 18–8–707(1)(c) prohibits the defendant from inducing or attempting to induce a witness or victim to "avoid legal process summoning him to testify."

### 2. Requirement of 'Actual Testimony'

█ Our question on certiorari requires us to determine what the prosecution must prove to sustain a conviction under subsection (1)(a) of the statute. The court of appeals concluded that there must be evidence of "an attempt to interfere with actual testimony," which it defined as testimony "anticipated to be offered at a hearing, trial, or other proceeding where witnesses would be sworn." *Cunefare*, 85 P.3d at 596. In reaching this conclusion, the court of appeals relied upon *People v. Moyer*, 670 P.2d 785 (Colo.1983), and *People v. Scialabba*, 55 P.3d 207 (Colo.App.2002).

In *Moyer*, the defendant was charged with charitable fraud and witness tampering by grand jury indictment. 670 P.2d at 786–87. The witness tampering charge arose out of the defendant's statement to a potential witness notifying her that if she appeared before the grand jury he would sue her, and any others who appeared, for perjury. *Id.* at 788. The witness did testify before the

grand jury, and also related the defendant's attempt to influence her not to do so. *Id.* at 790–91. The trial court dismissed the charge for lack of probable cause, and this court reversed, concluding that the statements attributed to the defendant were "designed to obstruct justice and were within the ambit of the statute." *Id.* at 792.

In *Scialabba*, the defendant was charged with assault against the victim and was prohibited from communicating with her. 55 P.3d at 208. The evidence established he wrote a letter and mailed it to the victim's address. Although the defendant used a different name for the victim (which he had used in the past), she believed the letter was intended for her. *Id.* The letter stated that if she were not to appear in court on the assault charges, the charges would be dropped, thereby "making things good" with him. *Id.* A month later, the defendant asked his mother to contact the victim and tell her not to appear in court. *Id.* at 211. The People added a count of witness tampering to the charges and the jury returned a verdict of guilty on that count. The defendant appealed, arguing in pertinent part that he should have been entitled to an abandonment instruction on the tampering charge. *Id.* at 210. The court of appeals disagreed, holding that the crime of tampering is an intentional attempt to interfere with a witness, without regard to the success or failure of the attempt. Therefore, the crime was complete when the attempt was made.

In both *Moyer* and *Scialabba*, the witnesses actually testified. However, there is nothing in either case that requires such testimony as an element of tampering. To the contrary, both cases reaffirm the precept that the crime of tampering arises out of the intentional attempt to interfere with a witness's testimony.

### 3. Interpretation of Section 18–8–707(1)(a)

█ To give effect to the intent of the legislature, we first look to the language of the statute itself. The plain language of subsection (1)(a) does not require that the witness or victim actually testify at a pro-

ceeding for the crime to occur. Indeed, unlike subsection (1)(b), the language does not even require that the witness or victim have been legally summoned to appear at the proceeding. *See generally People v. Yascavage.* To sustain a conviction under section 18–8–707(1)(a) the prosecutor is required to prove the defendant attempted to influence a witness or victim "to *testify falsely* or *unlawfully withhold* testimony." (emphasis added).

We first address the meaning of "testify" or "testimony." We interpret words and phrases according to their common usage unless they have a technical definition in the statutes. The general assembly defines testifying or testimony to "include[ ] oral or written statements, documents, or any other evidence that *may* be offered by or through a witness in an official proceeding." § 18–8–601, C.R.S. (2004) (emphasis added). This definition does not require that a statement be sworn to qualify as testimony. Similarly, it does not require that the witness be in the midst of actual testimony, but rather only that the witness be in a position such that he or she may offer testimony in an official proceeding.

We next turn to what "unlawfully withhold" means in the statute. We have guidance here, in that we have addressed this language in the context of a similar statute dealing with intimidating a witness. That statute provides that:

A person commits intimidating a witness or victim if, by use of a threat ... he intentionally attempts to [ ][i]nfluence the witness or victim to testify falsely or unlawfully withhold any testimony.

§ 18–8–704, C.R.S. (2004). In *People v. Proctor,* 194 Colo. 172, 570 P.2d 540 (1977), the defendant was charged with violating the intimidation statute. An individual, Mr. Box,

had witnessed a "ruckus" and was listed as a potential witness on the defendant's summons. *Id.* at 173, 570 P.2d at 541. The defendant told him that if he appeared in court he would be "taken care of." *Id.* At the time of the comment, Box had not received a subpoena, but he was subsequently subpoenaed and did testify at the defendant's trial. The defendant was convicted of intimidating a witness under section 18–8–604, 8B C.R.S. (1973) (1978 Repl.Vol. 8).[2] On appeal, the defendant argued that subsection (1)(a) of the statute was designed to deal solely with the circumstance in which a witness is induced to and actually does testify falsely or withhold material testimony. *Proctor,* 194 Colo. at 174, 570 P.2d at 541. Because Box did testify and presumably testified accurately, the defendant argued that the statute was inapplicable. The court was not persuaded. Rather, we concluded that "all that is necessary to complete this crime is to presently attempt, by threat of harm or injury, to influence someone to withhold testimony at a future time." *Id.* Hence, the victim or witness did not have to be under subpoena or summons at the time of the intimidation— nor was there any requirement of "actual testimony" implicit in the statute. We have not even required that the testimony to be withheld be material, relevant, or competent. *People v. Francois,* 198 Colo. 249, 598 P.2d 144 (1979).[3]

Because the language of the intimidation statute is substantially similar to the language we interpret in this case, we hold that the same principles apply here. Reading the introductory portion of the statute together with subsection (1)(a), we interpret "testimony" and "unlawfully withhold" to protect statements that may be offered in the future, not just those already sworn or received as evidence. Accordingly, under subsection

**2.** Section 18–8–604 reads: "A person commits intimidating a witness if, by use of a threat of harm or injury to ... any person he believes is to be called as a witness in any official proceeding, he attempts to ... [i]nfluence him to testify falsely or unlawfully withhold any testimony." This language is identical to section 18–8–704, C.R.S. (2004).

**3.** In *People v. Francois,* the defendant in a civil trial had asked potential witnesses to refrain from revealing any sexual intimacies between

himself and the witness. Thereafter, he was charged with tampering. The trial court instructed the jury that "unlawfully withhold" meant the withholding of testimony which was material, relevant, and competent. The defendant was found not guilty of the charge. The People appealed and we held that the jury instruction was improper because the court could not read an additional element of materiality into the statute absent clear legislative intent.

(1)(a), the witness or victim need not be under subpoena or legal summons at the time of the contact, and the defendant need not succeed in interfering with actual testimony of the victim or witness.

### 4. Application of Section 18–8–707(1)(a)

On the tampering charge, the jury was instructed that the elements of the crime were:

> 1. [T]hat the defendant, 2. in the State of Colorado, at or about the date and place charged, 3. intentionally, 4. attempts, without bribery or threats, 5. to induce a witness or a victim, or a person he believes is to be called to testify as a witness or victim in any official proceeding to, 6. testify falsely or to unlawfully withhold any testimony.

■ The People offered evidence at trial that assault charges were pending against the defendant as to which Ms. Cunefare was the named victim. Ms. Cunefare had given a statement to the police concerning the charges. While those charges were pending, Cunefare contacted Ms. Cunefare and convinced her to sign a letter to the District Attorney on April 6 recanting the charges and stating that "the events of that evening on March 21, 1998[sic] never happened." Ms. Cunefare testified that she felt under duress from Cunefare to sign that letter, that the events actually had occurred, and that the recantation was therefore false. She further testified that in August, Cunefare again contacted her and attempted to persuade her to sign a second letter to the District Attorney restating the false recantation. At that time, she declined to sign the letter.

Such evidence is sufficient to sustain the conviction for tampering. Ms. Cunefare was the named victim/witness in the assault proceeding. It is reasonable to conclude from her earlier statements that defendant at-tempted to induce her to recant her previous truthful statements. Further it is reasonable to infer that the defendant intended for her to continue to claim falsely that the events of March 21st did not happen if the matter went to trial. Thus, reasonable inferences from Ms. Cunefare's testimony support the statutory requirement that at the time of defendant's actions, he believed that the victim/witness may be called to testify in the case and he intentionally attempted to cause that victim/witness to testify falsely.

We conclude that the evidence presented to the jury was sufficient to sustain the tampering conviction.

### B. Forgery Conviction

#### 1. Background

Additionally, the People charged the defendant with forgery under section 18–5–102(1)(c), C.R.S. (2004), for sending the August letter to the prosecutor's office recanting the initial statement of events and purporting to contain the victim's signature.

The defendant was convicted under the section of the forgery statute that provides:

> A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or is calculated to become or to represent if completed: ... (c) ... [an] instrument which does or may evidence, create, transfer, terminate, or *otherwise affect a legal right, interest, obligation, or status.*

§ 18–5–102(1)(c) (emphasis added).

■ The question before us is whether, assuming that the defendant forged the victim's name on the August letter and sent it to the District Attorney in an effort to secure dismissal of the charges, such conduct constitutes forgery under the statute.[4]

---

4. No issue is raised here with respect to the defendant's intent. As a matter of law, the crime of forgery is complete when the act and guilty knowledge coincide with the intent to defraud. *Gentry v. People,* 166 Colo. 60, 441 P.2d 675 (1968). It is not necessary that the person receiving the forged instrument be actually defrauded to complete the crime. *Id.* The fact finder may infer the intent to defraud where the defendant passed an instrument he knows to be false. *People v. Brown,* 193 Colo. 120, 122, 562 P.2d 754, 755 (1977). Where any material portion of the instrument, including the name or signature, is fictitious a forgery conviction may be sustained. *Id.* at 122, 562 P.2d at 755.

## 2. Interpretation of Section 18–5–102

■ There are two questions of law implicit in the analysis: the first is whether the letter is an instrument under the statute, and the second is whether it "does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." § 18–5–102, C.R.S. (2004).

The definitions section of the statute answers the first question for us. Specifically, section 18–5–101(9), C.R.S. (2004), defines written instrument in part as "any paper, document, or other instrument containing written or printed matter or the equivalent thereof, used for purposes of reciting, employing, conveying, or recording information." *See also People v. Avila,* 770 P.2d 1330 (Colo.App.1988) (holding that computerized driver's records constitute a "written instrument").

■ The second issue is the more difficult one. The plain language of the statute refers not only to instruments that *create* a legal right but also encompasses those that *may otherwise affect a legal interest or status.* The general assembly has not defined legal right, interest, obligation, or status under section 18–5–102. Because the statute is not clear on its face, we must turn to other tools of construction, including legislative history.

An early version of Colorado's forgery statute provides insight into what traditionally constituted the crime of forgery. § 40–6–1, 3 C.R.S. (1963). That statute presented an exclusive list of forgery crimes, including forging the seal or handwriting of another. *Id.* The statute also suggests that false documents affecting legal proceedings may constitute forgery.[5] In 1971 the legislature recodified second degree forgery preserving several examples that had explicitly appeared in section 40–6–1 and dividing the offense into differing degrees. Colo. Sess. Law 1971, ch. 121, § 40–5–103 at 434. The 1971 amendment also included phrases arguably intended to allow more flexibility in applying the statute to forgery crimes.[6] In 1993, the general assembly again amended the forgery statute merging first and second degree forgery into the broad statute that we interpret today. Colo. Sess. Law 1993, ch. 322, § 18–5–102, 1975, 1988.

Until this case, Colorado courts have dealt primarily with forgery convictions involving negotiable instruments.[7] This lack of guiding precedent led the court of appeals to conclude that a forgery conviction could stand only where the interest or status contemplated relates to a financial, testamentary or property interest. However, in *People v. Medina,* 926 P.2d 149, 151 (Colo.App.1996), the defendant was convicted of forgery after presenting a false prescription to a pharmacist. *See also People v. Merchant,* 5 Ill. App.3d 636, 283 N.E.2d 724, 725 (1972) (suggesting that although pharmacist would suffer no pecuniary loss, forged prescription "intended to cause the pharmacist to assume he had the right to dispense a prescription drug to the defendant" was sufficient evidence to uphold conviction under the Illinois forgery statute).

Although no other jurisdictions have interpreted the precise language of 'legal right, interest, obligation, or status,' some jurisdictions with statutes similar to Colorado's have concluded that forgery should not necessarily be limited to instruments affecting pecuniary interests. In *Evans v. State,* 794 So.2d 415 (Ala.Crim.App.2000), the defendant was convicted of second-degree forgery for falsely completing several absentee ballot applications. On appeal, the defendant argued that because his actions were not committed for pecuniary gain, the forgery statute did not

---

5. "Every person who shall falsely make, alter, forge ... any acquittance, release, or discharge ... action, suit, demand ..." § 40–6–1.

6. "[O]r other valuable instruments;" "other instruments representing interests;" and the phrase we deal with here: "other instrument which does or may ... otherwise affect a legal right ..." Colo. Sess. Law 1993, ch. 322, § 18–5–102, 1975, 1988.

7. *See, e.g., People v. McDonald,* 53 Colo. 265, 125 P. 114 (1912) (use of check with forged signature), *Gentry v. People,* 166 Colo. 60, 441 P.2d 675 (1968) (check dated one year in future still creates a legally enforceable obligation sufficient to sustain forgery conviction), *People v. Vesely,* 41 Colo.App. 325, 587 P.2d 802 (1978) (filing false income tax returns).

apply. *Id.* at 435. The court of appeals disagreed, interpreting the introductory provision of the Alabama forgery statute to encompass situations where the forger forges an instrument "which has pecuniary significance *or other value.*" *Id.* Because the right to vote is a valuable legal right, the court of appeals held the forgery statute was applicable.[8] *Id. See also, People v. Gaul–Alexander,* 32 Cal.App.4th 735, 38 Cal.Rptr.2d 176, 180 (1995) (forged removal orders were intended to deprive a public agency of the lawful custody of the prisoner, which constituted a tangible legal right within the meaning of the forgery statute).

New York prohibits a person from "falsely mak[ing] ... a written instrument [with intent to defraud] which is or purports to be, or which is calculated to become or to represent if completed[ ] (1) a deed, will, codicil, contract, assignment, commercial instrument, credit card ... or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status." N.Y. Penal Law § 170.10 (McKinney 2004). In determining whether "cloned" cellular telephones fit within the broad description of forged instruments, which is identical to Colorado's forgery statute, the court concluded that both the carrier and lawful user of the phones have a "legal interest" in the unique numbers used to identify the phones. *People v. Pena,* 169 Misc.2d 366, 642 N.Y.S.2d 807, 810 (N.Y.Sup.Ct.1996). Therefore, the "cloned" cell phones were forged instruments within the meaning of the statute. *Id.*

Illinois has specifically addressed whether forged letters have any legal effect. Although Illinois' statute is written somewhat differently than Colorado's, both include broad, catchall language regarding the creation of rights or obligations. In the first case, the defendant altered a letter from his personal banker to give false information on the balances of several bank accounts. *Peo-*

*ple v. Hagan,* 145 Ill.2d 287, 164 Ill.Dec. 578, 583 N.E.2d 494 (1991). The letter was held to be capable of defrauding another within the definition of the Illinois forgery statute because a reasonable person could have relied on the information contained in the letter in business negotiations. *Id.*

In *People v. Muzzarelli,* 331 Ill.App.3d 118, 264 Ill.Dec. 536, 770 N.E.2d 1232 (2002), the defendant had been convicted of retail theft. Prior to sentencing, the defendant sent a letter to the judge purportedly written and signed by the defendant's co-worker requesting leniency. *Id.* 264 Ill.Dec. 536, 770 N.E.2d at 1234. Under the Illinois forgery statute, a document "apparently capable of defrauding another includes ... one by which any right, obligation, or power with reference to any person or property may be created, transferred, altered, or terminated." 720 Ill. Comp. Stat. 5/17–3(c) (West 2004). The court upheld a forgery conviction based upon the letter, rejecting the contention that only potential economic gain is a proper focus of forgery. *Muzzarelli,* 264 Ill.Dec. 536, 770 N.E.2d at 1236. Rather, the court held that while the sentencing judge was free to exercise discretion in sentencing the defendant, he was bound to consider all evidence and information from the parties concerning aggravation or mitigation during sentencing. *Id.* The letter "could have altered his right and obligation to impose a proper sentence." *Id.* Therefore, it was an instrument capable of having a legal effect as contemplated by the forgery statute.

Because the reach of the statute is broad and includes instruments that affect or may affect a legal right, interest, obligation *or* status, we construe the statute liberally. Even though transfer of property or monetary gain may be the most common objectives of forgery, we do not conclude that our statute is delimited by those objectives, The language of the statute does not apply only to instruments affecting financial, property,

---

8. In making its determination, the Alabama court interpreted only the introductory provision of section 13A–9–3, Ala.Code 1975 which states "(a) A person commits the crime of forgery in the second degree if, with intent to defraud, he falsely makes, completes or alters a written instrument ..." This is virtually identical to the in-

troductory provision of the statute we interpret today. Although the defendant in *Evans* was ultimately convicted under subsection (1)(a)(2) for "false instrument filed by a public employee," the court focused on the intent to defraud rather than the form of the document.

or legal matters but rather applies to any legal right, interest, obligation or status. It is a fundamental principle of statutory construction that we must give effect to every word of the statute. Legal "status" is one of those words.

### C. Application of Forgery Statute

The jury was instructed that the elements of forgery were:

1. [T]hat the defendant, 2. in the State of Colorado, at or about the date and place charged, 3. with intent to defraud, 4. falsely makes, completes or utters a written instrument, 5. which is or purports to be, of which is calculated to become or represent if completed an instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, or status.

■ The People presented evidence that the August letter was authored by the defendant and signed by him with the victim's name—and further that the defendant sent it to the District Attorney with the intent of securing dismissal of the assault charges against him.

That evidence is sufficient to sustain a conviction for forgery. Cunefare's letter to the prosecutor was intended to defraud the prosecutor and could have affected his legal status as a defendant in a pending criminal prosecution, the obligation of the prosecutor to pursue the assault charges, and the interest of the victim. Although a letter to the prosecutor has no legal effect standing alone, this letter was clearly an effort to influence the prosecutor and thereby impact or affect the pending case. Just as the judge in *Muzzarelli* could have been influenced by false information in making a sentencing decision, so too could the prosecutor have relied on the false letter when considering whether to dismiss the charges against the defendant. The prosecutor has an obligation to determine whether probable cause exists before moving forward with a case. If the sole witness recants her version of events or is reluctant to testify, the prosecutor may be inclined to dismiss the charges. The prosecutor would likely rely on the letter in making this determination. Forged letters to the prosecutor

purporting to be authored by the victim of a crime hinder the administration of justice.

### III. Conclusion

The Tampering statute includes an expansive definition of victims and witnesses and delineates prohibited conduct in three subsections. Unlike section 18–8–707(1)(b) discussed in *People v. Yascavage*, No. 03SC559, 101 P.3d 1090, 2004 WL 2711049 (Colo.2004), the subsection under which Cunefare was charged neither requires evidence that the witness or victim has been legally summoned to an official proceeding nor does it require evidence that the defendant's actions are interfering with actual testimony. In this case, there was sufficient evidence that Cunefare attempted to influence a pivotal witness to testify falsely or withhold testimony.

With respect to Cunefare's forgery charge, section 18–5–102 is not limited to the objectives of property transfer or monetary gain through the use of false instruments. The language of the statute applies to any legal right, interest, obligation or status—including a letter forged with the intent to secure dismissal of pending criminal charges. Cunefare's letter to the prosecutor, although it had no independent legal effect, was intended to impact Cunefare's legal status as a defendant in a criminal proceeding. Because the evidence presented against Cunefare was sufficient to sustain a conviction under section 18–5–102, we reverse the court of appeals decision with regard to the forgery conviction as well. We reinstate both the tampering and forgery convictions and remand to the courts of appeals for consideration of any remaining issues.

Justice BENDER, concurs in Part II.A., but dissents to Part II.B., and dissents in part to the judgment, and Justice MARTINEZ joins in the concurrence and dissent.

Justice BENDER, concurring in Part II.A., but dissenting to Part II.B., and dissenting in part to the judgment.

The majority affirms Cunefare's conviction for felony forgery under section 18–5–102(1)(c), C.R.S.2004, for falsely writing and

sending, under his wife's signature, a letter to the district attorney claiming that his wife's previously alleged assault charge against him never occurred. In my view, the plain language of section 18–5–102(1)(c) is ambiguous as to whether the forgery statute encompasses such a letter within its ambit. Applying traditional rules of statutory construction to determine the General Assembly's intent, I conclude that liability for felony forgery is strictly limited to those instruments that pertain to financial or property matters or have legal efficacy in and of themselves. Because Cunefare's letter to the prosecutor is clearly not one of these instruments, I respectfully dissent and would affirm the judgment of the court of appeals on this issue.

## Discussion

Pursuant to section 18–5–102(1)(c), a person may be convicted of felony forgery if, with intent to defraud, such person falsifies a written instrument which is, purports to be, or is calculated to become or to represent a "deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." The statute thus prescribes eight specific types of instruments that qualify for forgery liability. Cunefare's letter to the prosecutor does not fit within any of these types of instruments.

The ambiguity in the statute lies in the language, "or other instrument which does or may . . . otherwise affect a legal right, interest, obligation, or status." The term "affect" is broad in and of itself. Its definition is made even less precise because the General Assembly failed to define the terms "legal right," "legal interest," "legal obligation," or "legal status." Whether the written instrument must *directly affect*, or *indirectly affect*, a legal right, interest, obligation, or status

remains ambiguous. It is equally unclear as to *whose* legal right, interest, obligation, or status must be affected. For example, by influencing the district attorney to not prosecute, a forged letter, such as Cunefare's, could be viewed as having indirectly affected both the outcome of the case and the People's legal interest in seeking justice. Even if the forged letter had no impact on the People's decision to prosecute because this decision rests solely within the discretion of the district attorney, it could still be construed as having either directly, or indirectly, affected the prosecutor's legal obligation to consider the contents of the letter in reaching that decision. On the other hand, the letter might have had no effect—direct or indirect—on the decision to prosecute. Determining whether to include Cunefare's letter in the types of instruments prescribed in section 18–5–102(1)(c) thus becomes a question of determining how far the undefined terms in that statute should be stretched and to whom they should be applied.

Because a reading of the plain language of section 18–5–102(1)(c) does not resolve the ambiguity present in the statute, it is necessary to consult rules of statutory construction. The first relevant tool of statutory construction is the principle of *ejusdem generis*, which embodies the rule that "when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." *Davidson v. Sandstrom*, 83 P.3d 648, 656 (Colo.2004) (quoting *Black's Law Dictionary* 535 (7th ed.1999)).

Each of the specific types of instruments listed in section 18–5–102(1)(c) is either an instrument that affects a financial or property matter, *i.e.*, a deed, will, codicil, commercial instrument, promissory note, or check, or is an instrument that has some legal effect standing by itself, *i.e.*, a contract or assignment.[1] Here, the letter clearly does not

---

1.  I note that it is consistent with our prior Colorado case law on forged instruments to interpret section 18–5–102(1)(c) to apply to only those instruments that either affect financial or property matters or demonstrate legal efficacy in and of themselves. *See, e.g., Duncan v. People,* 178 Colo. 314, 497 P.2d 1029 (1972) (forged bank

check); *Gentry v. People,* 166 Colo. 60, 441 P.2d 675 (1968) (false date on bank check); *People v. McDonald,* 53 Colo. 265, 125 P. 114 (1912) (forged signature on bank check); *People v. Miralda,* 981 P.2d 676 (Colo.App.1999) (forged resident alien card); *People v. Avila,* 770 P.2d 1330 (Colo.App.1988) (falsified driving records). In

transfer any interest or right pertaining to financial or property matters. Standing alone, this letter has no legal efficacy in and of itself. The letter, consisting of two simple statements that the alleged events never occurred, cannot be construed as having any binding legal effect on anyone. The letter was not part of a required transaction of any kind and does not transfer, or even purport to affect, any legal right or interest. At the most, the letter is a written plea seeking the prosecutor's sympathies for a man it claims is wrongfully accused.

Even if Cunefare's letter had in fact been written by the defendant's wife, it would represent the wife's recantation of her earlier allegations against the defendant. While it is not uncommon for victims of domestic abuse to recant their initial accusations before trial, it is likewise not uncommon for the People to continue with prosecution under such circumstances because ultimately the district attorney, and no one else, makes the decision whether to prosecute. The prosecutor, of course, retains significant discretion in determining who to prosecute, what crimes to charge, and whether to request the dismissal of pending charges. *People v. Dist. Ct.*, 632 P.2d 1022, 1024 (Colo.1981) (holding that the broad nature of the prosecutor's discretion generally bars the judiciary from intervening to limit or otherwise control it); *see also People v. Sepulveda*, 65 P.3d 1002, 1008 (Colo.2003). Hence, whether a letter such as the one here had any effect, much less a binding effect, on this decision lies beyond our review.

Interpreting section 18–5–102(1)(c) to exclude, rather than include, Cunefare's letter is also consistent with the principle that a statute should not be interpreted in a manner that would render another statutory provision superfluous. *People v. Terry*, 791 P.2d 374, 376 (Colo.1990). Section 18–5–104, C.R.S.2004, defines the misdemeanor offense of second degree forgery as the falsifying of a written instrument "of a kind not described in section 18–5–102 ...." By creating this "catchall" lesser offense, the General Assembly intended for second degree forgery to cover all written instruments that were not otherwise specified in the provisions describing the more serious felonious crime of forgery. By forcing the fit of Cunefare's letter into the class of instruments specified in the felony forgery statute,[2] the majority broadens the class of instruments that the General Assembly prescribed in that statute and thereby renders section 18–5–104, the misdemeanor catchall forgery statute, a nullity. The majority's construction of section 18–5–102(1)(c) runs afoul of the principle that the statutory scheme should be read as a whole so as not to render a statute meaningless.

Further support for these two principles of statutory construction, which dictate that Cunefare's letter be excluded from the prohibition of our felony forgery statute, comes from the rule of lenity, a statutory construction principle which this Court recently embraced in *People v. Thoro Products Co., Inc.*, 70 P.3d 1188, 1198 (Colo.2003). In *Thoro Products*, we recognized that it is "axiomatic that criminal law must be sufficiently clear such that a citizen will know what the law forbids" and that any ambiguity in a criminal statute's meaning must therefore be interpreted in the defendant's favor. *Id.* The majority notes, and I agree, that section 18–5–102(1)(c) is "not clear on its face." Maj. op. at 308. That the majority resorts to an examination of the statute's legislative history to decipher its meaning shows the ambiguity present in section 18–5–102(1)(c) and therefore the need to construe this statute in favor of the defendant.[3] If the Court must

---

fact, the majority acknowledges that "[u]ntil this case, Colorado courts have dealt primarily with forgery convictions involving *negotiable instruments.*" Maj. op. at 308 (emphasis added).

**2.** As noted, the General Assembly prescribed a specific class of instruments in section 18–5–102(1)(c), *i.e.*, those affecting property or financial matters or having legal effect in and of themselves.

**3.** For example, while the majority interprets the statutory term "legal status" to apply to Cunefare's position as a defendant in a pending criminal case, maj. op. at 310, it is not evident that the General Assembly intended such a meaning. Perhaps, construing any ambiguities in favor of the defendant and consistent with the class of instruments specified in the statute, *i.e.*, those affecting financial or property matters or having a legal effect in and of themselves, the General Assembly intended "legal status" to refer to one's

consult legislative history to determine the sweep of a criminal statute's proscription, then surely the ordinary citizen could not possibly be expected to know what the statute forbids. We should, then, under the rule of lenity, construe any ambiguity in section 18–5–102(1)(c) in favor of the accused and find that Cunefare's letter does not constitute felony forgery.

The majority construes an early version of our forgery statute, ch. 111, sec. 21, § 40–6–1, 1963 Colo. Sess. Laws 328–29, to support its holding that the falsifying of a document affecting a legal proceeding constitutes forgery. *See* maj. op. at 308 (citing the statutory language, "Every person who shall falsely make, alter, forge ... any acquittance, release, or discharge ... action, suit, demand ...."). I disagree with such a construction, however, because the majority leaves out key language from the early statute in reaching its interpretation. In extracting the quoted language from the statute, the majority does not state that the language both directly before and after the quoted language refers only to instruments affecting financial or property matters or documents having legal efficacy in and of themselves:

> *Every person who shall falsely make, alter, forge,* or counterfeit any record or other authentic matter of a public nature, or any charter, letters patent, deed, lease, indenture, writing obligatory, will, testament, codicil, annuity, bond, covenant, United States treasury note or, United States bond, bank bill or note, post note, check or draft, bill of exchange, contract, promissory note, due bill, for the payment of money or property, receipt for money or property, power of attorney, any warrant for the payment of money at the state treasury, county order or any accountable receipt, or any order or warrant or request for the payment of money or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing or acquittance, release, or receipt for money or goods, or *any acquittance, release, or discharge* for any debt, account, *action, suit, demand,* or other thing real or personal, or any transfer or assurance of money, stock, goods, chattels, or other property whatever.

*See* ch. 111, sec. 21, § 40–6–1, 1963 Colo. Sess. Laws 328–29 (emphasis added).

In my view, this earlier statute supports the interpretation that felony forgery is, and always has been, intended to apply to only those forged instruments affecting financial or property matters or having legal effect standing alone.

I also disagree with the majority's statement that the 1971 amendments to the forgery statute included phrases, *i.e.*, "other instrument," which evidenced an intent "to allow more flexibility in applying the statute to forgery crimes." Maj. op. at 308. The 1971 statute, which contains language identical to that at issue here in section 18–5–102(1)(c), refers to "other instrument," but, as discussed above, "other instrument" must refer to the class of specific objects, *i.e.*, those affecting financial or property matters or having legal effect in and of themselves, described in the same statutory provision. The 1971 amendments also provided for a misdemeanor catchall forgery offense. Ch. 121, sec. 1, § 40–5–104, 1971 Colo. Sess. Laws 388, 435. As discussed, interpreting "other instrument" to apply to any kind of instrument renders meaningless the General Assembly's inclusion of the misdemeanor offense.

In describing the 1971 amendments as recodifying the earlier forgery statute, the majority states that the legislature "preserv[ed] several examples that had explicitly appeared in section 40–6–1 ...." Maj. op. at 308. There is no indication in the earlier statute that the General Assembly was giving "examples" of the types of falsified instruments for which one may be held liable for forgery. Rather, in that statute, as in section 18–5–102(1)(c), the General Assembly prescribed specific instruments, and it is from this specificity that I glean the General Assembly's intent to restrict felony forgery to falsified instruments affecting financial or property matters or having legal effect in and of themselves.

position as a beneficiary, trustee, assignee, offeree, etc.

Because the language at issue here in section 18–5–102(1)(c) has thus been used, in identical form, since 1971 to define the types of instruments for which a defendant may be held criminally liable for felony forgery, *see* ch. 121, sec. 1, § 40–5–103, 1971 Colo. Sess. Laws 388, 434–35, it is instructive that our prior case law concerning this statute has involved only those instruments affecting financial or property matters or documents demonstrating legal efficacy in and of themselves.[4]

Lastly, I note that while the majority relies heavily on cases from other jurisdictions in support of its broad reading of our forgery statute, in my view these cases are inapposite to our inquiry because, except for *People v. Pena*, 169 Misc.2d 366, 642 N.Y.S.2d 807 (N.Y.Sup.Ct.1996), they involve statutes with language significantly distinct and different from section 18–5–102(1)(c).[5] *See also* maj. op. at 308 (stating that "no other jurisdictions have interpreted the precise language of 'legal right, interest, obligation, or status' "). While the language of the New York forgery statute is similar to section 18–5–102(1)(c), *Pena* is inapposite because the instrument at issue in that case, *i.e.*, a cellular telephone altered to use a false billing number, necessarily possesses legal efficacy in and of itself. *See Pena*, 642 N.Y.S.2d at 810 ("the numbers allow the carrier properly to bill the user"). The *Pena* court's conclusion that such an instrument fits within the proscription of the

forgery statute does not, in my view, support the inference or proposition that a letter such as Cunefare's, *i.e.*, an instrument with no legal effect standing alone, should also be so included.

Parenthetically, I note that limiting section 18–5–102(1)(c) to only those instruments affecting financial or property matters or having legal efficacy in and of themselves is consistent with the interpretation of this statute by the court of appeals. *See People v. Cunefare*, 85 P.3d 594, 597 (Colo.App.2003). While the majority characterizes the court of appeals' holding as stating that a forgery conviction may stand only where the contemplated interest or status relates to a "financial, testamentary or property interest," maj. op. at 308, it omits the court of appeals' complete holding that the instrument must relate to a "financial, testamentary, real property, personal property, or *privilege interest.*" *Cunefare*, 85 P.3d at 597 (emphasis added). A "privilege interest" is something having legal effect in and of itself. *See Black's Law Dictionary* 1234 (8th ed.2004) (defining "privilege" as a "special legal right . . . [that] grants someone the legal freedom to do or not to do a given act").

When faced with the ambiguity presented in section 18–5–102(1)(c), our precedent and traditional rules of statutory construction require us to interpret the statute in a manner

---

4.   While the majority indicates that the case of *People v. Medina*, 926 P.2d 149 (Colo.App.1996), signified a broadening of the type of instruments that Colorado courts would consider for forgery purposes, maj. op. at 308, the issue in that case concerned a proportionality review of the defendant's sentence.  Further, although the defendant there had been convicted of forgery for falsifying a prescription for a controlled substance, that case, in my view, did not broaden the class of instruments subject to felony forgery liability.  Rather, because a prescription for a controlled substance would entitle the holder to receipt of a good, this case reinforces the interpretation that felony forgery applies to only those instruments affecting financial or property matters or having legal efficacy in and of themselves.

5.   *See Evans v. State*, 794 So.2d 415 (Ala.Crim. App.2000) (interpreting statutory language similar to our section 18–5–102(1)(d), C.R.S.2004, *i.e.*, involving public records or instruments, as opposed to the language at issue here in section

18–5–102(1)(c)); *People v. Hagan*, 145 Ill.2d 287, 164 Ill.Dec. 578, 583 N.E.2d 494 (1991); *People v. Muzzarelli*, 331 Ill.App.3d 118, 264 Ill.Dec. 536, 770 N.E.2d 1232, 1234 (2002) (under Illinois forgery statute, "To establish the offense of forgery, the State must prove that a defendant (1) had an intent to defraud; (2) knowingly made or altered a document; (3) did so in such a manner that the document purported to have been made by another; and (4) that the document was apparently capable of defrauding another"); *People v. Merchant*, 5 Ill.App.3d 636, 283 N.E.2d 724 (1972).  *See also People v. Gaul-Alexander*, 32 Cal.App.4th 735, 38 Cal.Rptr.2d 176, 178–79 (1995) (under California forgery statute, a person is guilty of forgery if:  "(1) 'with intent to defraud, [he or she] signs the name of another person . . . knowing that he or she has no authority so to do'; (2) 'falsely makes, alters, forges, or counterfeits,' any of a long list of writings; (3) forges the handwriting of another; (4) attempts to pass any of the above; or (5) falsifies a judgment or a record which is by law evidence").

that does not create criminal liability for felony forgery for all forged instruments. The General Assembly listed specific types of instruments for which a defendant may be held liable for felony forgery, and Cunefare's letter is not one of them.

I am authorized to state that Justice MARTINEZ joins in this concurrence and dissent.