No. 13,397.

SHARER v. THE PEOPLE.
(44 P. [2d] 914)

Decided April 15, 1935.

Mr. C. H. Babcock, Mr. A. D. Quaintance, for plaintiff in error.

Mr. Paul P. Prosser, Attorney General, Mr. Charles H. Queary, Assistant, for the people.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

The plaintiff in error Sharer, as defendant, was tried in the district court of El Paso county on a charge of forgery, found guilty, and sentenced to the penitentiary. He asks us to reverse the judgment.

The forgery in question was alleged to be that of the payee's indorsement on a check of the Dollar Building and Loan Association, dated March 19, 1927, for $700 payable to the order of Fred G. Forbes. In another case instituted at the same time as this, the defendant had been charged with forging the indorsement of the same name on a similar check for $300 dated five days after the other.

At a former trial of the case now before us, the jury could not agree and were discharged. As soon as the case had gone to the jury, the other case was tried, resulting in a conviction which on writ of error from this court was set aside. *Sharer v. People,* 92 Colo. 547, 22 P. (2d) 415. On remand the latter case was again tried and the jury found the defendant Sharer not guilty of forging the indorsement on the $300 check. Immediately after the other case had been placed for deliberation in the hands of the jury which shortly thereafter agreed upon that acquittal, Sharer was tried a second time in the present case, involving, as already stated, the in-

dorsement on the $700 check. The conviction that followed is now before us for review.

The original checks are not in the record. George W. Purcell, one of the people's witnesses, audited the books of the association in May of 1927, withdrawing the original checks and leaving a memoradum of each withdrawal in place of the check. He caused photostat copies of the checks to be made, and claimed—though without corroboration—that in the following July he returned the originals to the association, but did not take up any such memorandum. As in the previous trials, so in this last one, only the photostats were in court; and these, but not the original checks, were examined by the two expert witnesses and inspected by the jurors.

In the lower court Sharer contended by special plea that the acquittal in the companion case barred the present prosecution on the ground of former acquittal or double jeopardy, his defense in each of the two cases having been, at the very beginning and ever since, that both checks formed parts of a single business transaction.

That business transaction, as described by the defendant and his witnesses, consisted of a loan negotiated at the beginning of the year 1927 by the above mentioned Fred G. Forbes from the Dollar Building and Loan Association in the sum of $1,800, paid in three checks of the association for $800, $700 and $300 respectively, the latter two being the checks above referred to. The loan, according to the testimony on behalf of the defendant, was secured upon two tracts of land sold or contracted for on different dates by the defendant to Forbes. These tracts contained 40 and 45 acres respectively, and were situated in the Black Forest region of El Paso county. The 40-acre tract was the subject of a written contract which is in the record and shows that it was entered into by Sharer and Forbes on July 14, 1924, the agreed purchase price being admittedly $20 an acre. On this purchase price of the 40-acre tract, payable to Sharer, there

had been duly credited certain interest and a substantial portion of the principal, so that at the date when the alleged loan was completed there was due from Forbes a balance, as Sharer claimed, of only $450. According to Sharer's story, Forbes, desirous of increasing his holdings, in January of 1927 entered into a similar contract of sale and purchase on the 45-acre tract for a purchase price of $30 an acre (the land having increased in value, and some portions of the Black Forest region having in the meantime sold for as much as $100 an acre). The purchase price of this second tract was thus $1,350. With the $450 balance still owing on the first tract, there was therefore owing by Forbes to Sharer the total sum of $1,800.

The Black Forest region had, during the period mentioned, experienced a good deal of excitement, not only in the way of a "boom" that prompted the subdivision of the land for rural residence purposes, but also on account of the interest evinced by a California oil company with a view to exploring the area for gas and oil. Johnson, the business associate of Sharer in the Black Forest enterprise, testified that they together owned over 5,000 acres of the Black Forest land, and sold it all in comparatively small tracts, each of the two men taking title to certain parts thereof in his individual name and giving direct to the prospective purchaser of each parcel a contract, to be followed later—upon full payment of the purchase price—by a deed. There is no suggestion that Sharer did not have title to both tracts or that he was not entitled to sell and convey them. All went well for a while, possibly until the "boom" began to subside or until it was certain that the oil would not materialize. Forbes became dissatisfied with his land purchases, partly because he was unable to resell promptly and thus to pay off his indebtedness. Sharer, who was president of the Dollar association, had previously arranged to procure for Forbes the association loan already referred to, not to exceed $1,800 and payable in installments as

needed, and to apply the proceeds in payment of the land, to the extent that Forbes was unable to pay otherwise. Forbes not having raised other funds for the purpose, Sharer obtained the entire $1,800 needed by having the association issue the three checks above mentioned, aggregating the amount still owing to Sharer for the last two tracts he had sold to Forbes. However, Sharer shortly thereafter permitted the discontented Forbes to withdraw from the second sale transaction, and took back the 45-acre tract. He himself paid to the association on May 28, 1927, the sum of $1,352.47 and accrued interest, which left due on the loan a balance of $447.53. Forbes executed and delivered to the association a promissory note for the last named amount, dated May 14, 1927. In the main trial he at first testified it was to Sharer personally, but later admitted the actual fact. This note with its accrued interest was later paid to the association by Forbes in person. At the time of that payment the contract on the 40-acre tract—held by the association as security—was returned to Forbes, who shortly thereafter received a corresponding deed from Sharer. The papers on the 45-acre tract, which with those on the 40-acre tract had been held by the association as security for the entire loan, were returned by the association at the time of the readjustment, and were canceled by Sharer. Forbes's indebtedness was proportionately reduced when Sharer repaid the association the amount he had received to pay himself for the 45-acre tract. Sharer's purpose in so adjusting the Forbes transaction was to avoid controversies likely to be evoked by an organized attempt on the part of one Walter C. Davis and one J. C. Goudy to oust Sharer from control of the association, which attempt proved successful. This attempt included delving into the association records for the purpose of stirring up trouble for Sharer and instigated an audit by the state department of building and loan associations leading to a report of alleged irregularities that were really trumped up

against Sharer in connection with the above mentioned Forbes transaction. The alleged forgeries in this case and in the companion case were among the irregularities so charged, but the district attorney then in office took no action at that or any other time, the prosecution being instituted more than five years after the alleged discovery of the forgeries. Such is the picture presented by the evidence for the defendant. That evidence was not contradicted in the "former acquittal" hearing.

The Walter C. Davis mentioned was the man who obtained control of several financial institutions at Colorado Springs and operated them in such a way that, when the great depression began in 1929, those institutions could not escape serious business difficulties. These difficulties brought in their train an almost unbelievable amount of financial distress among the families of customers of the institutions. Davis became a fugitive from justice and, some time before Sharer's trial, committed suicide while incarcerated in New York City, pending interstate rendition to Colorado. These facts furnish the actual background existing at the time of the various trials referred to. No evidence is before us implicating Sharer in Davis's operations. Newspaper clippings accompanying a motion for a change of venue made Sharer's apparent connection with the failing institutions rather prominent.

In this court there are assigned numerous errors, but in view of the disposition we make of the case, only one of these requires discussion. This is the alleged error in failing to dismiss the defendant under the evidence adduced on the special plea of "former acquittal."

The issue just mentioned was submitted to a separate jury selected and sworn for the sole and specific purpose of trying and determining it. Sharer's only defense, both in this case (No. 8276 in the district court), now here under review, and in the case involving the $300 check (No. 8275), wherein he was acquitted, was the alleged business transaction with Forbes hereinabove

related. It is clear that, if the jurors had convicted, the conviction would have resulted because they did not believe the evidence on behalf of the defendant in relation to this alleged transaction, and because they attributed the writing of the Forbes indorsement to Sharer, and found the latter possessed of the criminal intent to forge. The verdict of not guilty, on the other hand, necessarily meant that Sharer's story, which was corroborated by other evidence, was believed either affirmatively or to the extent of at least raising a reasonable doubt in the jurors' minds as to his guilt. The check involved in the present case was evidence in the other, and the check involved in the other case was introduced in evidence here. In fact, virtually the same evidence was introduced in both cases.

The attorney general says in his brief: "We will not discuss the evidence since it is conflicting in many material points and leads but to one question of fact which was for the jury to determine; namely: Was there in existence at any time a loan to Forbes in the sum of $1,800.00? If there was such a loan, then defendant's explanation and contention of a single transaction with three separate checks as part thereof would have been a meritorious defense. If in fact there was no such loan, then necessarily there was no single transaction and each check was a separate and distinct forgery."

This statement of the attorney general describes with fair accuracy the preliminary issue of so-called former acquittal as tried in the court below. We may assume, in the absence of cross-errors by the people, that this properly represents the theory acquiesced in by both sides concerning the defendant's special defense. There could be no better proof thereof than the record itself, showing that the trial judge admitted evidence accordingly and instructed the "former acquittal" jury in harmony with this theory. Instruction No. 3, for instance, is as follows:

"If you find by a preponderance of the evidence that

the defendant and the witness Forbes engaged in a certain transaction, wherein certain lands were purchased and sold, and that in said transaction and as a part thereof two bank checks were issued, the one for $300.00 involved in the action in which the defendant was tried and acquitted, and the other for $700.00 involved in the action in which it is contemplated to try him, then the defendant would be in jeopardy and would be placed upon trial twice for the same offense, contrary to the Constitution of the United States and of the State of Colorado, by being placed on trial and tried in Cause No. 8276, * * * the action in which it is contemplated to try him. On the other hand, if the said check for $300.00 and the said check for $700.00 were each issued in a separate transaction, and not in one and the same transaction, then the defendant would not be put in jeopardy nor tried twice for the same offense by being put upon trial and tried in said Cause No. 8276 * * *.''

■ ■ By the procedure so adopted (and any technical objection of the prosecution thereto must be deemed waived because there are no cross-errors before us) the parties were bound.

■ But, while there was conflicting evidence, as the attorney general states in the quotation above given, it was only in the main trial that followed. The evidence adduced on the preliminary issue of ''former acquittal'' in behalf of the defendant stands uncontradicted and unimpeached. No evidence was introduced by the people. We cannot see how, in the circumstances, the jurors, instructed as they were, could have failed to render a verdict in favor of the defendant. Not to do so was prejudicial error.

What has been said cannot be reasoned away by any resort to technical refinements, and the attorney general is to be commended for not attempting any. Inspection of the two indorsements, either with the naked eye or by the aid of an ordinary reading glass, confirms the fact that the two indorsements in question were written

by the same person. When the jury in No. 8275 failed to find that Sharer had forged the signature on the $300 check, it necessarily meant, as already indicated, that the required proof was lacking, either as to Sharer's having written the indorsement, or as to the existence of a criminal intent, or as to both. It is not conceivable that the facts which Sharer obviously established with sufficient certainty to raise in the jurors' minds at least a reasonable doubt of his guilt and bring acquittal in No. 8275—facts identical as applied to both checks—could be consistently allowed by this court to mean innocence (as found by the jury) in one case and guilt in the other. The conclusion is irresistible when we consider that the check and the indorsement in the case at bar antedated both the check and the indorsement involved in No. 8275.

Even if there had been cross-errors assigned so as to impose upon us the task of considering the sufficiency of the "former acquittal" plea from a technical standpoint, instead of the standpoint adopted by the attorney general, it would not affect the right and wrong of the matter. And even if on technical grounds the "former acquittal" plea had been out of the case, we would still have to consider and determine whether the evidence thus doubly involved, and the fact of one unconditional acquittal thereunder, must not in all fairness and justice be held to negative a criminal intent, whoever might have done the actual writing of the indorsement. As we regard the matter, the criminal intent is actually so negatived.

In support of the above views, both on the "former acquittal" issue and on the main issue, attention is directed to the following facts appearing from the record, not in any way contradicted.

The board of directors of the Dollar Building and Loan Association regularly authorized a loan to Forbes on January 11, 1927. Under that authority the $700 and $300 checks, as well as an $800 check in January, amount-

ing in all to $1,800, were duly issued as the association's bona fide checks. The validity of these checks has not been questioned. The information charges an intent to defraud the Dollar Building and Loan Association and the First National Bank of Colorado Springs. Being genuine, the checks could not and did not defraud the association, whose transaction with Forbes was in the usual way and took the regular course; the association expected to pay and actually did pay the full amount of the loan; and it was immaterial to the association whether Forbes himself or somebody else should cash the checks. It took what it must have considered to be adequate security, a subject that is not before us. Likewise the checks could not and did not defraud the First National Bank of Colorado Springs, on which they were drawn, since the checks were at all times genuine checks, upon payment of which the bank in due course gave itself credit which has never been questioned. Forbes (who is not alleged in the information to have been defrauded) could not be and was not defrauded, since Forbes under his own testimony did not know of the checks, made no claim to them, and lost nothing to which he claims or admits he was entitled. In fact Forbes received credit on his indebtedness to Sharer for the full amount. If it be contended that Sharer lacked authority to issue checks for the full amount, the answer is that no doubt has ever been cast upon that authority and such an issue is not—and could not be—in this case. Nor are the merits or demerits of the land transaction between Sharer and Forbes involved here.

█ It is therefore clear that, under the foregoing facts and the instructions given, the jury were not justified in rendering a verdict against the defendant on his so-called "formal acquittal" plea. The evidence—unassailed as it was—entitled Sharer to a verdict in his favor. Nor, on the broader ground of fundamental inconsistency with the acquittal in the other case, can the subsequent conviction in the case at bar, which we are

reviewing, be upheld. In the "former acquittal" hearing under the theory governing that hearing, the defendant was consequently entitled to an affirmative verdict. And so also in the main trial, under the facts and circumstances revealed, the evidence was palpably insufficient to convict. For this reason, even if there were no others, the judgment must be reversed. The facts and circumstances disclosed by the record require that this be done with directions to the district court to dismiss the case.

Judgment reversed with directions.

MR. JUSTICE CAMPBELL and MR. JUSTICE YOUNG not participating.

MR. JUSTICE BURKE dissents.