19CA2139 Peo v Mathews 12-16-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA2139 City and County of Denver District Court No. 18CR749 Honorable Kenneth M. Laff, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Laura Ann Mathews, Defendant-Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE J. JONES Tow and Casebolt*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced December 16, 2021 Philip J. Weiser, Attorney General, Paul E. Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Craig L. Truman, P.C., Craig L. Truman, Denver, Colorado; Wheeler Trigg O’Donnell LLP, Dean Neuwirth, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021.
1 ¶ 1 Defendant, Laura Ann Mathews, appeals the judgment of conviction entered on a jury verdict finding her guilty of forgery under section 18-5-102(1)(c), C.R.S. 2021. We affirm. I. Background ¶ 2 Mathews is a Colorado lawyer who practiced elder and disability law from 2002 until shortly after a jury convicted her of forging the signatures of Stephen Leathers and Mary Pasquini Leathers (the Leathers) on a fee agreement. ¶ 3 In July 2016, Mathews met the Leathers following a presentation she gave on estate planning for children with disabilities. Shortly after the presentation, the Leathers met with Mathews and decided to hire her to prepare a trust and related documents for their child who has a disability. The parties entered into a verbal agreement with Mathews, who agreed to provide her legal services at a discounted rate of $275 an hour. Three months later, in October 2016, Mathews presented the trust documents to the Leathers and they signed them. ¶ 4 Following the creation of the trust, Mathews continued to perform legal work for the Leathers, including answering various questions, helping the Leathers apply for certain benefits for their 
2 child, and addressing realty issues relating to the Leathers’ house in South Carolina. ¶ 5 After about a year of working together, the Leathers became frustrated with Mathews because there were ongoing issues with the trust. They decided to get a second opinion and met with another estate planning lawyer, Brad Frigon. Frigon believed that Mathews’ estate plan was too complex and, after the Leathers retained Frigon as counsel, he created a new, more simplified trust. ¶ 6 The Leathers terminated Mathews in November 2017. A couple days later, Mathews sent them an invoice for $10,614.50. The invoice told the Leathers that they must pay in full within thirty days of Mathews’ termination “per [the] engagement agreement.” At trial, the Leathers testified that this was the first invoice they had ever received and the first they had heard about a written fee agreement with Mathews. ¶ 7 Mathews pushed for a quick payment, telling the Leathers they had two options: (1) pay within thirty days to avoid incurring interest or (2) in the alternative, schedule a fee arbitration. Both options, Mathews asserted, were required under the terms of the fee agreement. Prior to the thirty-day mark, Mathews sent the 
3 Leathers a second invoice increasing the amount owed to $16,900, based on a nondiscounted hourly rate. She also initiated a legal fee arbitration request through the Colorado Bar Association. The Leathers told Mathews they would respond to the invoice within thirty days. ¶ 8 Just shy of the invoice’s deadline, Ms. Leathers emailed Mathews asking her to “[p]lease send a copy of this engagement agreement you believe was signed by us.” Mathews emailed the Leathers a fee agreement purporting to bear the Leathers’ signatures and initials. But because the Leathers knew they had never signed the document, they sought help and contacted the Office of Attorney Regulation Counsel, and then the district attorney. After an expert confirmed that the document had been tampered with — specifically, the signatures on the fee agreement had been photoshopped thereon from another document — the district attorney charged Mathews with a single count of forgery. ¶ 9 After a two-day trial, the jury convicted her of forgery and the district court, finding “there was ample evidence to support [the conviction],” sentenced Mathews to eighteen months of probation. 
4 II. Discussion ¶ 10 Mathews contends that (1) the district court reversibly erred by denying her motion for judgment of acquittal because there was insufficient evidence to support the forgery charge and (2) cumulative error during opening statement and closing argument deprived her of her constitutional rights to a fair trial and an impartial jury. We address and reject both of Mathews’ contentions in turn. A. Sufficiency of the Evidence ¶ 11 Mathews first contends that the district court erred by denying her motion for judgment of acquittal because there wasn’t any evidence presented at trial showing that she intended to cause the Leathers a pecuniary loss, as required under section 18-5-102(1)(c). We disagree. 1. Standard of Review and Applicable Law ¶ 12 We review de novo a district court’s denial of a motion for judgment of acquittal based on insufficient evidence. People v. Harrison, 2020 CO 57, ¶ 31. In doing so, we consider “whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is 
5 substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.” People v. Perez, 2016 CO 12, ¶ 24 (quoting People v. Bennett, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)). In applying this test, we must “give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence.” Id. at ¶ 25 (quoting People v. Gonzales, 666 P.2d 123, 128 (Colo. 1983)). ¶ 13 We may not serve as a thirteenth juror and consider whether we might have reached a different conclusion. See Clark v. People, 232 P.3d 1287, 1293 (Colo. 2010). And we neither reweigh the evidence nor substitute our judgment for that of the jury. Harrison, ¶ 33. Thus, “[i]f there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element.” People v. Grant, 174 P.3d 798, 812 (Colo. App. 2007). ¶ 14 “To the extent that the resolution of this issue requires interpretation of the forgery statute, we conduct that review de novo.” People v. Carian, 2017 COA 106, ¶ 8. 
6 A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed . . . [a] . . . contract . . . which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status. § 18-5-102(1)(c). “As a matter of law, the crime of forgery is complete when the act and guilty knowledge coincide with the intent to defraud.” People v. Cunefare, 102 P.3d 302, 307 n.4 (Colo. 2004). The intent to defraud may be inferred “where the defendant passed an instrument [she] knows to be false.” Id. (citing People v. Brown, 193 Colo. 120, 122, 562 P.2d 754, 755 (1977)). 2. Analysis ¶ 15 We conclude that there was sufficient evidence for the jury to find that Mathews intended to defraud the Leathers into believing they were bound by a contract they had never signed. ¶ 16 The elements of the crime of forgery under section 18-5-
102(1)(c) are (1) that a person; (2) with intent to defraud; (3) falsely made, completed, or uttered a written instrument; (4) which was, or which purported to be, or which was calculated to become, or to represent if completed; (5) a deed, will, codicil, contract, 
7 assignment, commercial instrument, promissory note, check, or other instrument which did or might evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status. § 18-5-102(1)(c). Mathews doesn’t dispute that the Leathers’ signatures were falsely affixed to the fee agreement. (Nor does she challenge the sufficiency of the evidence that she altered the document.) Rather, she contends that she didn’t intend to defraud the Leathers because she didn’t intend to cause a loss to the Leathers; she merely sought payment for past services, and the Leathers acknowledged that they owed her something for her work. ¶ 17 Implicit in Mathews’ argument is the notion that a qualifying loss under section 18-5-102(1)(c) can only be a pecuniary loss. But the Colorado Supreme Court has held otherwise. In Cunefare, the court concluded that “[t]he language of the statute does not apply only to instruments affecting financial, property, or legal matters but rather applies to any legal right, interest, obligation or status.” Cunefare, 102 P.3d at 309-10; see also Connecticut v. Dickman, 75 A.3d 780, 793 (Conn. App. Ct. 2013) (falsifying a doctor’s signature on a work status report was forgery under a similarly worded statute because it affected the defendant’s legal right to receive 
8 worker’s compensation benefits — specifically, prescription drugs or devices); People v. Gordon, 121 N.Y.S.3d 484, 485 (App. Div. 2020) (a forged certificate of insurance that was necessary for the defendant to conduct business as a contractor affected a legal right, interest, obligation, or status and qualified as forgery under a similarly worded statute); In re Conduct of Kirkman, 830 P.2d 206, 207 (Or. 1992) (forging a dissolution of marriage judgment qualified as forgery because the attorney sought to affect a legal right or status). The court determined that “[b]ecause the reach of the statute is broad and includes instruments that affect or may affect a legal right, interest, obligation or status, we construe the statute liberally.” Cunefare, 102 P.3d at 309 (emphasis omitted). Thus, the Cunefare court concluded that a defendant’s forged letter to a prosecutor fell under subsection (1)(c) because the letter had an intended legal effect “to influence the prosecutor and thereby impact or affect the pending case.” Id. at 310. So although causing a monetary loss may be one of the more common objectives of 
9 forgery, the forgery statute’s application isn’t limited to such losses.
1 ¶ 18 The jury could properly have inferred that Mathews intended to convince the Leathers that they were obligated to pay the amount she sought, that they would otherwise owe her the interest authorized by the fee agreement, and that they were required to arbitrate the dispute. By seeking to impose these obligations on the Leathers, Mathews sought to alter the parties’ respective legal rights. ¶ 19 Mathews’ reliance on two Colorado Supreme Court cases to support her position that intent to defraud requires an intent to cause a pecuniary loss is misplaced. ¶ 20 In Sharer v. People, 96 Colo. 483, 493, 44 P.2d 914, 917 (1935), the supreme court reversed the defendant’s forgery 1 In any event, the jury could reasonably have found that Mathews intended to cause a pecuniary loss. Her objective was to convince the Leathers that they were bound by the written fee agreement, pursuant to which she sought more in fees than the Leathers thought she was entitled to. (Though the Leathers agreed they owed Mathews something for her work, they disputed the amount Mathews sought, and Mathews never explained satisfactorily why she was entitled to be paid at a non-discounted rate.) 
10 conviction because it concluded that there was no evidence that the defendant intended to defraud the victim. But in that case, the victim, “under his own testimony[,] did not know of the [forged] checks, made no claim to them, and lost nothing to which he claim[ed] or admit[ed] he was entitled.” Id. at 492, 44 P.2d at 917. In this case, in contrast, Mathews provided the forged document to the Leathers intending to affect their legal rights, and the amount owed was disputed. ¶ 21 In People v. Billington, 191 Colo. 323, 325, 552 P.2d 500, 501-02 (1976), the defendant admitted that he signed his bosses’ names on certain checks without their knowledge but said that he had been authorized to do so for business purposes. Ultimately, the jury acquitted the defendant of one forgery count, convicted him of another forgery count, and didn’t reach verdicts on the other forgery counts. Id. The supreme court upheld the conviction, concluding that the defendant’s intent to defraud as to each count was different because separate transactions were involved. Id. at 327, 552 P.2d at 503. Because one check was used for a legitimate business purpose, the jury could properly infer that the defendant lacked the intent to defraud as to that check, and because the 
11 proceeds of the other check were used to buy drinks after a party, the jury was entitled to conclude that the defendant had the intent to defraud as to that check. Id. These facts bear no resemblance to the facts in this case. And we reject Mathews’ suggestion that Billington stands for the proposition that evidence of intent to defraud must concern a pecuniary loss. ¶ 22 Alternatively, Mathews argues that because she was entitled to quantum meruit compensation even without a fee agreement, the Leathers couldn’t have experienced a loss.
2 This argument, too, misses the mark. ¶ 23 Though Mathews would, indeed, have been entitled to payment under quantum meruit, the amount to which she would have been entitled wouldn’t necessarily have equated to the amount she sought through the invoices.
3 As well, as discussed, Mathews 2 Under the doctrine of quantum meruit, when a client discharges an attorney, the client remains obligated to pay the reasonable value of the services rendered even in the absence of a valid fee agreement. See In re Matter of Gilbert, 2015 CO 22, ¶ 22. 3 Ms. Leathers testified that she expected the fees for the trust to total around $4,000 based on Mathews’ estimates. Mr. Leathers testified that he “didn’t even know what a . . . fee agreement was until [he] met with [his] second attorney in 2017.” He also said he 
12 also sought to alter the Leathers’ legal rights by convincing them that, because they had signed the fee agreement, full payment was due within thirty days of termination, specified interest would be charged if they didn’t pay the full amount within thirty days, and any disputes would be subject to arbitration. ¶ 24 In sum, we conclude that the evidence was sufficient to support the forgery conviction. B. Prosecutor’s Statements ¶ 25 We next reject Mathews’ contention that her conviction was the product of cumulative error based on the prosecutor’s remarks in opening statement and closing argument that, she asserts, (1) misstated the law of intent to defraud; (2) misstated the law of fee agreements; (3) were speculative; and (4) personally denigrated her. 1. Standard of Review ¶ 26 Mathews doesn’t argue that any of the prosecutor’s statements, individually, warrant reversal.
4 Instead, she argues couldn’t call the invoice accurate and felt uncomfortable going to arbitration under a forged contract. 4 Because defense counsel didn’t object to any of the prosecutor’s statements, we would review any challenge to them individually for plain error. By eschewing any such challenge and invoking 
13 that the doctrine of cumulative error applies. Under that doctrine, reversal is required if “the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process.” Howard-Walker v. People, 2019 CO 69, ¶ 24 (quoting People v. Lucero, 200 Colo. 335, 344, 615 P.2d 660, 666 (1980)).
5 Because multiple errors must be established (not merely alleged) for this doctrine to apply, People v. Daley, 2021 COA 85, ¶ 141, we must first assess each alleged error individually to determine whether there were, indeed, multiple errors. To do this, we determine whether the statements were improper, taking into account the totality of the circumstances. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). 2. Allegedly Improper Statements ¶ 27 Mathews challenges four categories of statements. cumulative error, Mathews makes an end run around that standard. 5 To be clear, the “error” in this context is the court’s failure to intervene sua sponte when the prosecutor commits misconduct. See Wend v. People, 235 P.3d 1089, 1096-97 (Colo. 2010). 
14 a. Intent to Defraud ¶ 28 Mathews contends that, during closing argument, the prosecutor misstated the law when he said one could defraud someone out of money already owed, even if “that money was going to be paid” anyway, and by analogizing Mathews’ conduct to taking property from a person behind on car payments when the remedy is repossession of the car. But this argument ignores the relevant context. As discussed, the Leathers didn’t concede that they owed Mathews the entire sum she sought; the amount owed was disputed. Viewed in this context, the prosecutor’s comments could be viewed as saying that a person’s agreement to pay something doesn’t get the creditor off the hook for any amount the creditor seeks to collect. That would, of course, be a correct statement of the law. ¶ 29 Nonetheless, we will assume that the prosecutor’s first comment was improper. b. Law of Fee Agreements ¶ 30 Mathews next contends that the prosecutor misstated the law of fee agreements during opening statement and closing argument. Specifically, the prosecutor said during opening statement that 
15 Mathews “knew that . . . by not having an agreement in place at the onset [of her engagement with the Leathers], that she was violating the Rules of Professional Conduct that attorneys are governed by.” And during closing argument, the prosecutor said, [Mathews] wanted to possibly retroactively come into compliance with the Colorado Rules of Professional Conduct. Because . . . the rule for fees . . . states that you have to have a fee agreement if you have not worked with a person regularly or something — that’s a summary, or I’m paraphrasing. But if you haven’t worked with someone regularly you have to have a fee agreement either before you start the work or shortly thereafter. ¶ 31 Because Mathews was retained on an hourly basis rather than a contingency basis, Colo. RPC 1.5(b) applied. It provides, “[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee and expenses shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation.” Colo. RPC 1.5(b). ¶ 32 Mathews contends she was only required to provide the basis or rate of her fee in writing within a reasonable time, and she maintains that she did that by (she says) presenting a copy of the 
16 fee agreement to the Leathers, along with the trust documents, in October 2016. ¶ 33 But there was substantial evidence that Mathews didn’t provide her fee structure to the Leathers in writing until November 2017, more than one year after she began representing them. That was not within a reasonable time. Though the prosecutor was technically incorrect in that he referred to the necessity of a fee agreement, the gist of his argument was correct. c. Speculative Statements ¶ 34 Third, Mathews contends that the prosecutor made unreasonable and speculative arguments that she forged the fee agreement because she was “scared,” “freaked out,” and “panicked” about not having a signed, written fee agreement. We conclude, however, that these were inferences that the jury could reasonably have drawn from the evidence. See People v. Maloy, 2020 COA 71, ¶ 61 (a prosecutor has wide latitude to argue based on facts in evidence and reasonable inferences drawn from those facts). 
17 d. Denigrating Statements ¶ 35 Last, Mathews contends that during closing argument the prosecutor improperly attacked her testimony by using the phrase “nice try, chicken thigh.” ¶ 36 We agree with Mathews that the prosecutor’s flippant comment was inappropriate. 3. No Cumulative Error ¶ 37 As noted, to reverse based on cumulative error, we would have to conclude that “the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process.” Howard-Walker, ¶ 24 (quoting Lucero, 200 Colo. at 344, 615 P.2d at 666). We have identified two possibly improper remarks. We aren’t persuaded that these remarks deprived Mathews of a fair trial. III. Conclusion ¶ 38 The judgment is affirmed. JUDGE TOW and JUDGE CASEBOLT concur.